

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __03/20/2024__

Steven L. Klepper
Member
Admitted in NJ and NY

Reply to New York Office
Writer's Direct Line: 646.563.8947
Writer's Direct Fax: 646.563.7947
Writer's E-Mail: sklepper@coleschotz.com

— Maryland —
Texas —
Florida

March 6, 2023

**Via ECF**

The Honorable Analisa Torres
United States District Court for the Southern
District of New York
500 Pearl Street
New York, NY 10007-1312

      Re:    *Brown v. Prove Identity, Inc., et al.*, Civil Action No. 1:22-cv-09315-AT

Dear Judge Torres:

      We write on behalf of Defendants Prove Identity, Inc. ("Prove") and Rodger Desai ("Desai," and, together with Prove, "Defendants") in the above-referenced action to respectfully request that the Court order the sealing of several exhibits to be filed contemporaneously in connection with Defendants' Motion to Dismiss the Complaint filed by Plaintiff Matthew Brown (the "Motion to Dismiss"). In particular, Defendants request that the Court permit them to file copies of the following exhibits under seal to protect Prove's sensitive, non-public financial and business information contained therein, which, if disclosed to the public, is substantially likely to cause Prove competitive harm:

1. Payfone, Inc. 2008 Stock Plan Notice of Stock Option Grant to Plaintiff (and accompanying Stock Option Agreement), dated March 21, 2013, attached as Exhibit B to the March 6, 2023 Declaration of Steven L. Klepper in Support of Defendants' Motion to Dismiss (the "Klepper Declaration");

2. Payfone, Inc. 2008 Stock Plan Notice of Stock Option Grant to Plaintiff (and accompanying Stock Option Agreement), dated November 19, 2013, attached as Exhibit C to the Klepper Declaration;

3. Payfone, Inc. 2008 Stock Plan Notice of Stock Option Grant to Plaintiff (and accompanying Stock Option Agreement), dated June 4, 2014, attached as Exhibit D to the Klepper Declaration;



March 6, 2023
Page 2

      4. Payfone, Inc. 2008 Stock Plan Notice of Stock Option Grant (and accompanying Stock Option Agreement), dated September 24, 2014, attached as Exhibit E to the Klepper Declaration; and

      5. Payfone, Inc. 2008 Stock Plan Notice of Stock Option Grant (and accompanying Stock Option Agreement), dated September 13, 2016, attached as Exhibit F to the Klepper Declaration (each, an "Option Grant Notices," collectively, the "Option Grant Notices").

Pursuant to Section IV.A.ii. of Your Honor's Individual Practices in Civil Cases, we have conferred with counsel for Plaintiff regarding the requested sealing, and they indicated that Plaintiff does not intend to oppose the request. Defendants submit the following legal arguments in support of their request to seal the five Option Grant Notices.

**I.**    **The Sealing of Five Exhibits to Defendants' Motion to Dismiss is Warranted Under the Circumstances**

While there is a common law presumption in favor of permitting public access to "judicial records and documents," this Court ultimately "has supervisory power over its own records and files," and public access to same "has been denied where court files might have become a vehicle for improper purposes." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). The Second Circuit has articulated a three-step test for determining whether a document may be sealed, pursuant to which the Court must: (i) determine whether the document is a "judicial document," *i.e.*, one that is "relevant and useful to the performance of the judicial function and useful in the judicial process"; (ii) "determine the weight of the presumption of access" in light of the role and value of the document "in the exercise of Article III judicial power"; and (iii) identify and balance all of the factors counseling against disclosure and weigh them against the presumption of access. *See Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020).

Here, Defendants do not contest that the Option Grant Notices are "judicial documents" because they are being filed in connection with Defendants' Motion to Dismiss, and thus, a "presumption of access attaches." *Mirilis*, 952 F.3d at 59. However, as outlined above, the Court must also consider "the weight of the presumption" and then balance competing considerations against it, including "the privacy interests of those resisting disclosure." *Id.*

While the Option Grant Notices generally, as well as a few of the specific provisions therein, are central to this litigation, and thereby to adjudicating the legal issues raised in Defendants' Motion to Dismiss, most of the detailed information contained in the documents is not squarely relevant to the substantive issues presently before the Court. For example, neither the details contained in the Option Grant Notices regarding exercise price per share and vesting dates for Plaintiff's stock options, nor many of the specific terms and conditions governing the option grants, are central to resolving Defendants' arguments as to the viability of Plaintiff's claims at this stage. Indeed, Plaintiff did not attach copies of the Option Grant Notices to his Complaint and only references the specific contents thereof in a handful of his allegations.



March 6, 2023
Page 3

Nevertheless, Defendants believe that these documents are important enough to be presented to the Court in their entirety in connection with the Motion to Dismiss, so that the Court has the complete context before it. Thus, although there is some weight to the presumption in favor of access with respect to the Option Grant Notices, it is weaker than as to documents that are wholly and centrally relevant to the substantive issues in the dispute.

Weighing this weaker presumption of public access to the Option Grant Notices against Defendants' competing interest in maintaining the privacy of the confidential and competitively sensitive business and financial information contained therein demonstrates that sealing is warranted here. The Option Grant Notices contain sensitive, non-public information about Prove's business and financials, including details concerning the specific terms and conditions governing the stock options Prove awards to its employees and the vesting schedules used by Prove in connection with those awards. Moreover, the Option Grant Notices reveal pricing information that provides insight into Prove's historic valuation as of the dates of each of the awards.

Defendants seek to maintain the privacy of this competitively sensitive and confidential information to protect their commercial interests, which courts in the Second Circuit have found sufficient to overcome the presumption of public access. *See United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) ("Commercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts"); see also cases discussed below. Here, there is a substantial likelihood that public disclosure of the confidential information contained in the Option Grant Notices will result in competitive harm to Prove's business. Specifically, this information would give Prove's competitors a detailed look into Prove's compensation practices, as well as the particulars of the option awards Prove has granted to its employees (including the number of shares awarded, specific terms and conditions of the awards, and vesting schedules used). In addition, the information contained the Option Grant Notices, taken together, provides acute insight into the value of Prove's business at the time the options were awarded.

The disclosure of this information – which implicates Prove's "specific business information and strategies" as they relate to Prove's equity incentive compensation and stock prices – may harm Prove's ability to attract and retain top talent, one of the company's most valuable assets as a growing technology startup. For example, competitors may misappropriate the confidential details of Prove's equity awards to structure their own compensation packages and use same to harm Prove in future employment negotiations and unfairly lure potential new employees away from Prove and to the competitor. *See Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 706-07 (S.D.N.Y. 2017) (allowing the redaction of average and individual salary information from summary judgment record due to risk of competitive harm); *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (redactions warranted where disclosure of a company's "specific business information and strategies" threatened to cause the company economic harm by "provid[ing] valuable insights into a company's current business practices that a competitor would seek to exploit"); *Graczyk v. Verizon Commc'ns, Inc.*, 2020 WL 1435031, at *9 (S.D.N.Y. Mar. 24, 2020) (redactions warranted where "material contain[ed] sensitive information that, if disclosed, might harm



March 6, 2023
Page 4

[movant's] competitive standing" and cause them to suffer "competitive disadvantage in future negotiations"); *KeyBank Nat'l Ass'n v. Element Transp. LLC*, 2017 WL 384875, at *3 (S.D.N.Y. Jan. 26, 2017) ("KeyBank asserts that the sensitive nonparty financial information it seeks to protect is all the data a competitor would need to determine its valuation of the leases. This competitive injury is sufficiently serious to warrant protection.").

Disclosure would further raise a substantial risk of harm to Prove by giving competitors access to Prove's confidential financial information. Indeed, the fact that Prove is a privately-held company – whose financial and business information is not widely disclosed and whose stock plan information has no present impact on the general public – underscores that the confidentiality of its business and financial information should be maintained. *See Rodo Inc. v. Guimaraes*, 2022 WL 17742392, at *1 (S.D.N.Y. Dec. 5, 2022) ("Sealing is particularly appropriate when the confidential business information relates to a privately held company." (citing cases)); *Louis Vuitton*, 97 F. Supp. 3d at 511 (permitting redactions of information regarding the defendant company, "a closed business, which implicates legitimate privacy interests"); *Amodeo*, 71 F.3d at 1051 ("Financial records of a wholly owned business … and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public.").

In sum, the Option Grant Notices are not of sufficient public interest to overcome Prove's legitimate business and financial interest in keeping the confidential, proprietary, and competitively sensitive information contained therein private. Accordingly, sealing of this small set of documents is warranted here.

## II.     Conclusion

For these reasons, Defendants respectfully request that the Court enter an order sealing the five Option Grant Notices, which are attached as Exhibits B – F to the Klepper Declaration. If this request is acceptable to Your Honor, a "So Ordered" line is set forth below for the Court's convenience.

As always, we thank the Court for its time and attention to this matter.

Respectfully submitted,

*/s/ Steven L. Klepper*

Steven L. Klepper

SLK:cgh
cc:     All counsel of record (via ECF)



March 6, 2023
Page 5

GRANTED.  The Clerk of Court is directed to terminate the motion at ECF No. 27.

SO ORDERED.

Dated: March 20, 2024
       New York, New York

_____
ANALISA TORRES
United States District Judge

COLE SCHOTZ P.C.